Good morning. Good morning. If it pleases the Court, Carolyn Phillips, appearing on behalf of the appellant, Mr. Rodriguez. This case involves sentencing that is completely astonishing in its unreasonableness, but I think more importantly, the gravamen of this case is that the conviction itself lacked evidence sufficient to support a violation of 18 U.S.C. 32A, 5A, 8. Let me ask you a question. You're not challenging, as I understand it, the 39A conviction? No, we're not. Nor the sentence? We are challenging the sentence. Where in your brief do you challenge the 39A sentence? Well, the sentence is challenged for its unreasonableness in general because he was sentenced to 168 months. Well, but that's not the question I asked. I can't find anything in your brief that separately contends that the 39A sentence was improper. I find lots of arguments about why the sentence on A5 was improper and why the conviction on A5 was improper. But does your brief argue that the sentence on 39A was improper? And if so, where? The intention certainly was to challenge the sentence in general and its scope simply because the Court did not procedurally erred, basically, in sentencing Mr. Rodriguez in any way, shape or form. Let me ask Judge Hurwitz's question another way. If we were to agree with you and set aside the 14-year sentence, was there any reason we shouldn't leave the 5-year sentence that he got for the 39A charge in place? Exactly. Exactly what? Well, the Court did not follow the procedure in finding clear and convincing evidence regarding any enhancement of Mr. Rodriguez's sentence. There are three. I'm not sure you're focusing on my question. I'm sorry. If we agree with you and vacate the more serious offense, is there anything further for us to do? The sentencing should then drop down to a level, offense level 9. And I believe the Court would be correct and accurate in dismissing the 32A, 5A, 8 count. In order to sentence Mr. Rodriguez for the violation of 39A, it would be the offense level which is the basic offense level of 9. In order for the Court to then enhance that sentence for reckless endangerment to a level 18, the Court should have considered some clear and convincing evidence, just as in Gardenhire. There should have been clear and convincing evidence that Mr. Rodriguez actually was aware of the risk that was involved and changed. What Judge Silverman is asking is this. If we were to vacate the sentence on A5, vacate the conviction on A5, that would be because we, I think, believe that Gardenhire controlled and there wasn't sufficient evidence to support the conviction. So take that as a given. You won on that for that reason. Now, what do we do with the 39A sentence? I believe the case should be remanded for resentencing with the guidelines as given through Gardenhire. Counsel, as Judge Gould, on that issue, as I understood your briefing, you were saying that the sentence could not be enhanced without clear and convincing evidence under the Treadwell language, which wasn't shown. So therefore, it should be resentenced even under 39A. Yes, that's correct. Okay, well, before we get totally ahead of ourselves as to 32A5, I have a question for you because I'm not so sure we should vacate that conviction. My question on that is, was there sufficient evidence to go to a jury on violation of 32A5 under the Jackson v. Virginia standard, assuming that the simplified statement of the elements to be proved beyond a reasonable doubt, or that it was willfulness, that he was pointing a laser at the aircraft, and that it was done so with reckless disregard for safety of human life? Is there sufficient evidence on that? No, there is not. And I think what the Court failed to consider is the fact that there was a requirement. There's a two-prong requirement to find recklessness, and one is that the defendant must have been shown to be aware that his actions created a risk of interference. The consistent testimony of the experts, both from the government and from the defense, indicated that the general public is not aware of the risk that's created in the use of lasers on aircraft. There was no evidence that Mr. Rodriguez had any particular knowledge that using this laser toward a helicopter was going to create a risk that would endanger the life or interfere with the operation of the helicopter. Is your case different in any factual respect from Gardenhire? I'm sorry? Is your case different factually from Gardenhire? Because I must say, before Gardenhire, I'm not sure I would have thought the quantum of evidence in that case was insufficient to prove recklessness, but we've been told that by a panel of this Court. So take that as a given. Are the facts in your case, the government says the facts in your case are different, and that distinguishes Gardenhire, do they? Well, the facts in Gardenhire involved two aircraft. I'm trying to think. One was a private air jet, and the other was a police helicopter. I think if there was any difference, it was the fact that Mr. Rodriguez ran to his house when the police appeared, told his co-defendant to lie about why she was. Well, that to me shows that he knew that pointing a laser at the helicopter was wrong, and that probably would be good evidence of guilt on 39A. But I'm not sure it shows the intended, the requisite mens rea. Is there anything else different about your case from Gardenhire? I don't believe so. Materially different? I don't believe so. I mean, I think that there is. We deal with a different burden of proof. In Gardenhire, it was beyond a reasonable doubt. And in your case, it's clearly convincing evidence. Yes. Yes. And I think for purposes of the violation of the statute itself, there is obviously the burden of beyond a reasonable doubt. And what was the evidence looking at it on behalf of the prosecution in the most positive light, we still are left with no evidence regarding whether or not, what evidence showed that Mr. Rodriguez actually knew what risk he was creating. I think that certainly is similar. There is no information. There was no evidence. The government relied on the fact that Mr. Rodriguez had admitted shining the laser at the helicopter multiple times and knew that he had actually, the beam had actually reached the helicopter. But that's where it ends. There is no other evidence that would indicate that Mr. Rodriguez had any other, any particular knowledge of what was going to happen, what risk he might be creating by shining the beam on the helicopter. Do you want to reserve a couple of minutes for rebuttals? Yes, please. Thank you. Good morning. Good morning. May it please the Court, Michael Tierney for the United States of America. Approximately four times, Mr. Rodriguez aimed the beam of his laser into the cockpit of a flying police helicopter and kept it there as the helicopter flew along. That's not an easy thing to do by any means. So that establishes a 39A conviction. Nobody doubts it. What's the evidence here that he had the requisite mens rea intended to cause harm or had the reckless intent? And in light of a decision of this Court that seems to hold under indistinguishable facts that that's not enough to establish an A-5 conviction. Yes, Your Honor. First of all, let me talk about the distinguishability of the facts between this and and I think it's a very important question. We start with the proposition that I began with, and that's that Mr. Rodriguez targeted not just an aircraft. And remember, in Gartenheuer, it's not even clear that Mr. Gartenheuer knew that he was hitting an aircraft at all. Here, Mr. Rodriguez was targeting the cockpit, not just the aircraft in general and not knowing whether he hit the aircraft or not, but he was targeting specifically the cockpit. And he combined that with the other evidence in this case. For example, it doesn't take a physicist or someone who's an expert in optics to know that if you shine a very bright light into a driver's eyes, that's a dangerous thing to do. So that every time we have 39A, which covers pointing a laser at an aircraft, every time someone points a laser at an aircraft, why isn't there also an A-5 conviction under your view? Again, Your Honor, because we're not just talking about pointing a laser at an aircraft in general, we're talking about aiming it at the cockpit. Remember that Air 1, the aircraft at issue in this conviction, was 31 feet long and the beam of Mr. Rodriguez's laser was only 3 feet in diameter when it got there. Now, Mr. Rodriguez admitted that he saw the beam hitting the aircraft and coming all the way back to him. So in order for him to put that spotlight into the cockpit, it required a willed act, a steady hand, and it wasn't an easy thing to do. That's what the government's expert testified, Dr. McClain. What evidence do we have that he was aiming for the cockpit as opposed to just a target in the sky? Your Honor, it's a simple matter of physics. We're, you know, I don't want to sound like Star Trek, but we're lawyers, not engineers. So simple matters of physics may not work very well for us. Tell us what the evidence was. Of course, Your Honor. Well, as even the pilot recognized, and the pilot was not a physicist by any means, what he said is that if the beam is not in the cockpit, I won't perceive it as a very, very light. No, I'm sorry. You missed my question. He hit the cockpit. There's no question about that. He did, Your Honor. What evidence was there that he was aiming for the cockpit and not aiming for just something flying around the tail or whatever? What evidence do we have that he was aiming for the cockpit? Yes, Your Honor. The first piece of evidence is that he hit and kept the beam in the cockpit for four to five seconds at a time. Now, remember, this aircraft is a quarter mile away from him. It's flying at about 60 miles an hour, and it's about 500 feet off the ground. And four different times, Mr. Rodriguez not only puts the laser beam in the cockpit, he keeps it there as it's flying around four different times. He knows that he's hitting the aircraft, and so in order to not just hit the aircraft but target the cockpit, he's got a relatively small window, and he keeps it there four times. So that shows his intent, that what he is trying to do is hit the cockpit. So maybe you can prove he intended to shine the beam in the cockpit. What did you have to show that he had the requisite mens rea to violate A-5, which either involves intentionally trying to harm individuals or acting recklessly? What is there to show that he knew or should have known that shining the laser would cause the pilot to be unable to fly the plane? A couple of different pieces. Copter. I'm sorry, Your Honor. I didn't mean to jump. I said plane, but I meant copter. Go ahead. I didn't mean to jump on the end of your question. It's a couple of different pieces of evidence. Now, first of all, we began with the proposition that why would a person do that? Why would you target a cockpit of an aircraft four separate times? But that, to me, now, that gets back to the question I asked you before, and I'm interested in the answer. We already have a statute that prohibits shining a laser at an aircraft. We have a much more serious statute, A-5, that covers a lot of things, terrorism, putting a bomb on an aircraft, stuff akin to that, and it requires a higher mens rea. So if an idiot, Mr. Rodriguez certainly qualifies for that description, shines a laser at an aircraft and happens to hit the cockpit or thinks that that's the place where he wants to shine it, that alone establishes an A-5 conviction. See, I'm trying to figure out what the difference between the two statutes is in your view. Your Honor, Section 32 requires proof that a person willfully intends to interfere with the operation of an aircraft under circumstances that are at least reckless and possibly intentional endangerment. 39A doesn't require that. Section 32A-5, this particular statute, was actually passed to address the problems of putting lasers on aircraft. It's just that because of those enhanced proof requirements, you need what we have here, what the jury accepted beyond a reasonable doubt, was that Mr. Rodriguez's intent was to put the laser in the cockpit and thereby. . .  But what you're saying is that whenever somebody shines the laser at the front of the aircraft, in the case of a helicopter at the cockpit part of an aircraft, that suffices to provide sufficient evidence to meet the A-5 requirement. Here, Your Honor, so as I said, simple answer, no. We have other evidence in this case, several pieces. First of all, we put out the common-sense proposition that when a person shines a very bright laser at a driver's eyes, there's a clear effect on that. And again, you don't need to be a physicist. But that's what I just asked you. I just asked you if that was enough, and you said, no, we have more. So if it's not enough, what more do you have? The, again, common-sense proposition that shining a bright light in a driver's eyes is dangerous, along with Mr. Rodriguez's intent. Here, he fled from the police. He attempted to hide the laser. He told his co-defendant to tell sort of exactly the story you're getting at, which is, oh, I was just shining it up in the sky, or maybe I was just. . . Well, but he didn't. . . If he were a lawyer, not an idiot, he would have known that 39A prohibited everything that he did. So his flight and his lying and his hiding the laser don't help me with the A-5. So I keep getting back to the question I asked you, and I think I've now gotten two answers to it, so I want to be clear. Is shining the light in a place where it might hit the pilot's eyes sufficient, in your view, to establish the A-5 conviction? Because it seems to me that's really all you have with respect to the mens rea. His running away shows that he knows he did something wrong. His lying shows that he did something wrong. His hiding the laser shows that he knows he did something wrong. So that establishes to me plenty of evidence to support the 39A conviction. Isn't it true that all you really have for the A-5 conviction is the fact that the laser was shined into the cockpit? No, Your Honor, it's not. We've been debating back and forth the import of this evidence that Mr. Rodriguez ran and that he told his co-defendant to tell a different story. And I know what you're saying, Your Honor, is that that may only go to the Section 39A conviction. But we believe it goes to the Section 32 conviction as well. And that is because Mr. Rodriguez, by telling his co-defendant to just say, hey, we're just shining it up into the sky, it betrays an awareness here, again, in context with all the other facts and in light of the jury's verdict beyond a reasonable doubt, that he knew what he was doing. He knew that he was targeting the pilots. Do you think the evidence shows that he was trying to bring down the helicopter? I'm not sure, Your Honor. I guess what I would say is it shows that he was trying to interfere with the operation of the helicopter. Well, let's start with bringing it down and then we'll work backwards. Do you think he was trying to crash the helicopter? Is this a little junior Osama bin Laden we're dealing with here? I don't know, Your Honor. Well, the evidence doesn't show that, then I take it. Well, I would say is that what I would say is that he was trying to distract the driver. Okay. Now, what evidence do we have if he's not, if we don't have proof he's trying to crash the helicopter, what evidence do we have that he's trying to distract the pilot? He's putting what he knows to be a very bright light. He's trying to hit the helicopter with the light, but how do we know he's trying to distract the pilot as opposed to target practice with his laser? He's trying to hit the pilots, Your Honor. He's trying to hit them with the bright light. I think it's no different than if Mr. Rodriguez stood on a freeway overpass and took a handheld spotlight and aimed it at the driver's seat of a car. There it would be very clear that what Mr. Rodriguez was trying to do was distract the occupant, distract the driver, and here it's the same thing. Yes, the helicopter is further away, but Mr. Rodriguez knows his light's getting there because he sees it reflecting off the helicopter, and he knows that it's very bright because it's so bright it's getting all the way there, and I see that my time is up. So in the end that's your critical fact, right? That's the fact you were, I'm trying, I've tried to ask you this question a couple times now, but in the end that's the fact that you hang your hat on in this case, that the laser hit the cockpit and Mr. Rodriguez must have known that that would affect the helicopter. More than once. I see that my time is up, Your Honors. May I answer? That question, sure. Again, Your Honor, our critical fact is that he aimed the laser at the cockpit, at the pilots of the aircraft. So the answer to my question is yes. It's yes, Your Honor, with the caveat that he's not just... I understand, you think you have other stuff, but that's your, you didn't have that you'd lose in your view on 32A5. It would be a very difficult case for the government to prevail. I have one question if I may, Judge Silverman, because I'm taking you off, but assuming for a moment that we were to sustain the conviction under 32A5, though that isn't the direction of much of the questioning, but assuming that and looking solely at the sentence, isn't it correct that the judge sentenced based on not reckless endangerment of life, but rather sentenced based on the view that there was intentional endangerment? Yes, that is correct, Your Honor. And under Treadwell, wouldn't that have to be shown by clear and convincing evidence? So therefore, wouldn't, even if we sustain the conviction that you're advocating for, wouldn't we have to vacate the sentence and remand for resentencing? We don't think so for two reasons, Your Honor. First of all, we don't think the clear and convincing evidence standard applies here. And second, even if it does, we believe that the evidence establishes that Mr. Rodriguez acted intentionally to endanger. Okay, thank you. Even though the judge didn't have the benefit of guard and hire at the time? That's correct, Your Honor, although he did have the benefit of watching the jury and, sorry, watching the trial, presiding over the trial, and seeing all the evidence presented there. Okay, I think that, Judge Gould, does that do it for you? Yeah, I think just, I'm correct that the jury finding were on instructions about recklessness, right? The jury didn't determine this intent. It was just the judge. The jury determined, Your Honor, that Mr. Rodriguez willfully acted to interfere and that he recklessly endangered. Those were the elements. But not that he intentionally, that he acted with the intent to endanger. That was not one of the elements, no, Your Honor. Right. So the judge found that, not the jury. Your Honor, as we argued in our brief, we think that the combination of those two elements mean that the jury did find it, but that in any event, there is sufficient evidence to support the judge's finding. I want to make sure that your answer to Judge Gould's question is that I understand  if, in fact, the judge found the requisite intent to impose the enhancement, then the burden would be by clearing convincing evidence, would it not? We don't think so, Your Honor, for the reasons we put in the brief, and I can explain those articulation here. Okay. I understand your position. I read the brief. I understand the answer. I guess that does it, Mr. Tierney. Thank you. Thank you, Your Honor. Ms. Phillips, back to you. You get the last word. Thank you. I think to answer that last question regarding the intent, we have a situation where the judge should be looking at factors and evaluating to see whether or not there's clear and convincing evidence of an intention, the intent to endanger the safety of the helicopter and its occupants. And, frankly, there was no discussion about whether or not Mr. Rodriguez was aware of recklessness. Was he aware that he was creating a danger, much less was there any evidence that the court looked at and said this is sufficient to find that Mr. Rodriguez was acting with the intent to endanger the helicopter. What's your answer to Mr. Tierney's point that this is not unlike shining a laser at a driver of a car at night? This is so similar to Garden Hire and many other cases where the laser is used. I know that the government's been emphasizing the idea that Mr. Rodriguez was targeting a cockpit. And I think the reason that they're saying that is because the light, when it is shown on the main part of the helicopter, and I believe the testimony was that it was shown on the helicopter, which would be the largest part of the helicopter, any light that hits that cockpit refracts, becomes brighter. But I don't believe there is any evidence that would substantiate that Mr. Rodriguez would know that. This helicopter is traveling a quarter mile away at 500 feet up in the air. Any common sense, I mean, if you think about a car coming towards you with their brights on, the farther away that light is, the dimmer it becomes. Why wouldn't it be a reasonable inference that if he shines it at the helicopter, at the cockpit in particular, not just once but four times, a reasonable inference is it's going to affect the pilot? Because there is no evidence that would show that he knew that this light traveling that distance could actually interfere with the operation of the helicopter if there's a nun. And I believe what the experts, and this is what I said earlier, that the experts... Only an expert could be convicted of this crime really is what you're saying. Well, no. What I was going to say, Your Honor, is this, that the general public, the experts understand that the general public do not know what the dangers are in using the laser. What happens? The physics of laser beams as they're shot through the air, they become larger. That's the fact that they refract when they hit glass in a cockpit. All these elements are not common knowledge. Does the evidence show that Mr. Rodriguez knew or should have known that the beam was hitting the cockpit as opposed to the helicopter in general? There was no evidence that he would know. The pilot says it hit the cockpit, but I'm trying to think of somebody on the ground. What does the evidence show that Mr. Rodriguez knew or should have known about where the placement of the laser was? Reading through the record, Your Honor, I would say that there is no evidence that he knew that he was shining this laser at the cockpit. He was shining the laser at the helicopter and tracking it for three or four seconds as it circled. Judge Gould, anything further? Well, I'm not sure I can frame this in a question that goes to the issue we have. But, I mean, surely it doesn't require that a laser bring down a helicopter or a commercial airline to sustain a conviction under 32A5, correct? That is correct. Okay. There must be the willfulness that means that Mr. Rodriguez would have to have known the consequences of his acts. He would have had to have known that what he was doing was creating a risk and a danger. But there is no requirement that he would actually bring the helicopter down. Okay. I think we've come to the end of the road here. Thank you very much, Ms. Phillips. Mr. Tierney, the case just argued is submitted. Good morning.
judges: Silverman, Gould, Hurwitz